UNION STEVEDORING CORPORATION et al. v. NORTON, Deputy Compensation Commissioner, et al.

No. 6680.

Circuit Court of Appeals, Third Circuit.

Aug. 11, 1938.

J. Paul Erwin, of Philadelphia, Pa., for appellants.

J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., J. Barton Rettew, Jr., Asst. U. S. Atty., of Philadelphia, Pa. (Z. Lewis Dalby, Chief Counsel, U. S. Employees' Compensation Commission, and Chas. T. Branham, Associate Counsel, U. S. Employees' Compensation Commission, both of Washington, D. C., of counsel), for appellee Augustus P. Norton, Deputy Com'r.

1014

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

Upon December 8, 1929, Willard Carlton was injured while employed by the appellant on board a steamship in the Delaware River at Philadelphia. Carlton was employed as a "holdman", viz., one who works within the hold of a ship. The injury incurred by Carlton and the requirement of his treatment as it existed upon March 27, 1935, five and a half years after his injury, were described as follows by an orthopedic consultant, "We are dealing with a chronic back pain undoubtedly sacro-iliac in origin, in an individual whose work requires an unusual degree of strain upon the back muscles and articulations. He has been given a long course of conservative treatment without any appreciable benefit. It seems to me, therefore, that the rational thing to do is to obliterate that which is producing his pain, that is, the sacro-iliac articulation. An arthrodesis on this joint would, in all liklihood, result in a complete cure of his condition no matter what the diagnosis may prove to be * * * ".

The question presented for our determination is whether or not the employer's insurance carrier should pay for this operation in view of the circumstances set out hereafter.

Following his injury in 1929, Carlton received the long course of conservative treatment described by the orthopedic consultant in his communication to the Deputy Commissioner, and compensation was paid to Carlton during various periods of disability until terminated as of July 3, 1931, by order of the Deputy Commissioner filed upon July 6, 1931. The record contains neither the order which required compensation to be paid to Carlton nor the order which terminated it. We are therefore not informed as to whether the order requiring the payment of compensation included directions as to medical or surgical attendance. Since the burden of proof upon these issues rests upon the appellants I think we are justified in an assumption that the order of compensation included no direction to the appellants concerning medical or surgical attendance for Carlton, and that the order terminating compensation did not refer to medical or surgical attendance.

Upon October 31, 1932, Carlton filed suit in the District Court praying a mandatory order requiring the Deputy Commissioner to review the order terminating compensation as provided by subsection (b) of Section 21 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. A. § 921(b). This suit was dismissed and no appeal was taken by Carlton. It appears from the opinion of the District Court[1] in the case referred to that Carlton and the insurance carrier entered into an agreement for a lump sum settlement for a stated consideration, that compensation was terminated by order of the Deputy Commissioner for this reason and that more than thirty days after the order of termination Carlton sought review of the Deputy Commissioner's order. The District Judge, construing Sections 21 and 22 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 921 and 922, held that the order terminating compensation was final and not subject to review upon the expiration of the thirty day period prescribed by the statute, and that the Deputy Commissioner could review an order relating to an award only within the "term" of the award. The provisions of the settlement referred to are not part of the record in the case at bar, and in view of the burden of proof upon the appellants in this connection we may assume that the release did not purport at least specifically to relieve the appellants of any obligation in respect to furnishing medical or surgical attendance to Carlton.

Upon March 27, 1935, however, Carlton filed an application with the Deputy Commissioner for further medical, surgical and hospital treatment on account of his continuing injury. Upon May 27, 1935, the Deputy Commissioner made the following finding of fact and order:

"That on March 27, 1935, the claimant made application for further medical, surgical and hospital treatment on account of his injury, such as might be determined by the Deputy Commissioner to be required by the nature of the injury and the process of recovery; that a condition causing pain and disability still exists resulting from the injury of December 8, 1929; that the performance of an operation to fuse the right sacro-iliac articulation is required for the cure of this condition; that this operation will require hospitalization and aftercare, the furnishing of a

---

[1] Filed July 5, 1933, and not reported.

back brace, and probably physiotherapy treatments; that such surgical operation and other treatment is treatment which the nature of the injury and the process of recovery requires, and which it is the duty of the employer and insurance carrier to furnish under the provisions of Section 7 (a) of the Act, 33 U.S.C.A. § 907(a).

"Upon the foregoing facts it is ordered by the Deputy Commissioner that the employer and insurance carrier furnish claimant with appropriate medical, surgical and other attendance or treatment for the relief of the condition from which the claimant is now suffering."

We think that there is no doubt that the findings of fact of the Deputy Commissioner as to Carlton's need of surgical attendance and the cause of it, as indicated, are fully supported by the record before the Deputy Commissioner and, if legally correct, could not be set aside by the District Court. Calabrese v. Locke, D.C., 56 F.2d, 458; Pocahontas Fuel Co., Inc., v. Monahan, D.C., 34 F.2d 549, affirmed 1 Cir., 41 F.2d 48; Candado Stevedoring Corporation v. Locke, D.C., 57 F.2d 905, modified without reference to this point 2 Cir., 63 F.2d 802. The question presented to the court below and to ourselves is solely one of law and may be stated as follows: Did the order of the Deputy Commissioner of July 6, 1931 (the District Court refusing review), terminating Carlton's compensation, also terminate his right to further medical or surgical attendance?

The appellants contend that if the medical and surgical benefits provided by subsection (a) of Section 7 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 907(a) may be defined as "compensation", that is to say, are included within the term "compensation" as used by the Act, it follows, Carlton's right to "compensation" being terminated, that his right to medical benefits and surgical attendance was terminated likewise and cannot be revived now.

The appellants rest their argument upon the words used in the Act itself. For example, subsection (a) of Section 4 of the Act, 33 U.S.C.A. § 904(a), provides that every employer shall secure the payment to his employees of the compensation payable under Sections 7, 8 and 9, 33 U.S.C.A. §§ 907–909. Subsection (a) of Section 7 provides that the employer shall furnish the employee with " * * * such medical, surgical, and other attendance or treatment * * * as the nature of the injury or the process of recovery may require." Section 8 provides that compensation for disability shall be paid by the employer to the employee at the rate and in the manner specified by that section. Section 9 provides for compensation to be paid upon the death of an employee to his dependents. These provisions indicate an intention upon the part of Congress to treat medical and surgical attendance as "compensation".

Further examples of such intention are given by the appellants. They contend that since Section 6(a) of the Act, 33 U.S.C.A. § 906(a), which provides that "no compensation shall be allowed for the first seven days of the disability, except the benefits provided for in Section 7 [section 907 of this chapter] * * *" indicates that the "benefits" to the employee provided by Section 7, namely, medical and surgical attendance, must be treated as "compensation" within the meaning of the Act. Referring to those provisions of subsection (a) of Section 7 of the Act, 33 U.S.C.A. § 907(a), which provide that if the employee shall unreasonably refuse to submit to medical or surgical treatment the Deputy Commissioner may " * * * suspend the payment of further compensation during such time as such refusal continues * * *", the appellants contend that since the word "compensation" is used as quoted, the section itself relating to medical and surgical treatment, the word "compensation" must refer to medical and surgical treatment.

The appellants also call our attention to the provisions of subsection (a) of Section 13 of the Act, 33 U.S.C.A. § 913(a), providing that the right to compensation for disability and the right to compensation for death shall be barred unless claims are filed within one year after the injury or death. This section provides the only statute of limitations contained in the Act relating to the filing of claims. Since it is the only statute of limitations for filing claims contained in the Act and since medical or surgical attendance is not referred to in it, the appellants take the position that the word "compensation" must of necessity include medical and surgical attendance. The appellants cite the case of Liberty Mutual Insurance Co. v. Parker, a decision by Judge Chesnut in the District Court of the United States for the District of Maryland, reported in 19 F.Supp. 686, in

support of their position. The point decided by Judge Chesnut, however, in the cited case was that compensation provided by Section 8 of the Act, 33 U.S.C.A. § 908, was barred if a claim was not filed within a year. The phrase occurring in the latter portion of the learned Judge's opinion, however, namely, " * * * such surgical treatment being classed by section 6, 33 U. S.C.A. § 906, as a part of the compensation to which the employee is entitled" (page 687), is emphasized in the appellants' argument but is in fact in the nature of dictum.

The appellees for their part contend that since subsection 12 of Section 2 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 902(12), specifically defines "compensation" to mean the "money allowance payable to an employee or to his dependents * * *, and includes funeral benefits * * *", the phrase "money allowance" can mean only compensation to be paid to the employee pursuant to Section 8 of the Act and the death benefits provided by Section 9 of the Act, 33 U.S.C.A. § 909; that subsection (a) of Section 7 imposes directly upon the employer an express obligation to furnish medical and surgical attendance to the employee and that this obligation is not limited or restricted by any other provisions of the Act. The appellees lay particular emphasis upon that portion of subsection (a) of Section 7 which states that the employer "shall furnish such medical, surgical, and other attendance * * * for such period as the nature of the injury or the process of recovery may require."

The appellees contend that the United States Employees' Compensation Commission, charged with the duty of administering the Act and the Deputy Commissioners immediately concerned with its enforcement, have construed compensation under Section 8 of the Act to be a separate and distinct subject from medical and surgical attendance under subsection (a) of Section 7, that the obligation to furnish medical treatment cannot include the money allowance to the employee, defined by Section 2, 33 U.S.C.A. § 902, and that the employer is required by the Act to furnish medical and surgical "service", not money.

The appellees refer to subsection (a) of Section 15 of the Act, 33 U.S.C.A. § 915(a), to the effect that no agreement made by an employee to pay any portion of a premium paid by his employer to an insurance carrier, or to contribute to a benefit fund maintained by the employer for the purpose of providing compensation or medical services and supplies, shall be valid, as distinguishing plainly between "compensation" and medical services. The appellees also refer to subsection (e) of Section 33 of the Act, 33 U.S.C.A. § 933(e), wherein medical benefits and "compensation" are clearly distinguished and referred to separately.

The appellees cite the provisions of subsection (j) of Section 14, 33 U.S.C.A. § 914(j), providing for the discharge of the liability of the employer for "compensation" by a lump sum payment, and contend that since the cost of medical and surgical attendance cannot be computed as provided, being incapable of being reduced in advance to a definite sum capable of computation, that this indicates a plain separation between compensation on the one hand and medical and surgical attendance on the other.

Further reference to the contentions of the respective parties would be fruitless. It is our duty to construe the Act liberally and in such wise as to effect the purposes intended by Congress. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 414, 52 S.Ct. 187, 189, 76 L.Ed. 366; Jamison v. Encarnacion, 281 U.S. 635, 640, 50 S.Ct. 440, 442, 74 L.Ed. 1082.

The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., is intended to afford relief to persons engaged in maritime employment who incur injuries in the course of that employment. Whether the medical and surgical attendance prescribed by Section 7 of the Act be defined as "compensation" or be called "service" is immaterial when one regards the fundamental purpose of the Act. Three things constitute its essence, medical and surgical attendance, compensation for injuries, and death benefits, and none of the three may be deemed to be mutually exclusive. In other words, the deputy commissioner may require the payment of "compensation" under Section 8, without requiring the employer to furnish medical and surgical benefits pursuant to the provisions of Section 7. He may require the employer to furnish medical and surgical attendance to the injured employee under Section 7 of the Act without requiring payment of compensation under Section 8. The deputy commissioner may re-

quire medical and surgical attendance by the employer to the injured employee pursuant to the provisions of Section 7, "compensation" under Section 8, and death benefits under Section 9 if the injured employee died as a result of an accident incurred in the course of his employment. To take the position that because the deputy commissioner has terminated one of the three benefits provided for the employee and his dependents under the Act, he has therefore terminated one or both of the other benefits conferred by the Act, is as little founded in reason as to contend that because the Deputy Commissioner has required one of the three benefits under the Act to be given by the employer to the employee or his dependents, he has required the employer to give all three.

■ Setting to one side for the time being the question of whether the Deputy Commissioner possessed the power to make the specific order complained of in the case at bar, we think there is no doubt but that deputy commissioners charged with the enforcement of the Act may make orders requiring an employer or an insurance carrier to furnish an injured employee with medical and surgical attendance.

■ In Candado Stevedoring Corp. v. Locke, 2 Cir., 63 F.2d 802, it was held that an award providing that the defendant employer should furnish to the claimant such further medical, surgical and other attendance and treatment as the nature of the injury or the process of recovery might require, was justified by the provisions of Section 7 of the Act. In Bethlehem Shipbuilding Corporation v. Monahan, 1 Cir., 62 F.2d 299, it was held that a Deputy Commissioner by "compensation order" might require the employer to pay for the medical and surgical attendance furnished to an injured employee by his own doctors, the employer having neglected to provide proper care for him. The Court based its decision upon the provisions of Section 7 of the Act. We entertain no doubt that under the Act the Deputy Commissioner has jurisdiction to determine all questions relating to the rights of the respective parties and to make appropriate orders in the premises. In this connection see subsection (a) of Section 23 and subsection (a) of Section 27, 33 U.S.C.A. §§ 923(a) and 927(a).

■ Our opinion in this regard is confirmed, we think, by the provisions of subsection (c) of Section 21, 33 U.S.C.A. § 921(c), read in conjunction with those of Sections 4 and 7 of the Act, 33 U.S.C.A. §§ 904, 907. Section 4, as we have stated heretofore, specifically includes in the "compensation payable" to the employee the medical and surgical attendance referred to in Section 7. An order by the deputy commissioner requiring medical and surgical attendance to be furnished to the employee by the employer is, we think, " * * * a compensation order making an award * * *" within the meaning of subsection (c) of Section 21, which provides that the District Courts by mandatory injunction or otherwise may compel an employer to carry out the final orders of the deputy commissioner. We think it is significant that in the subsection referred to the phrase used is "an award". The effect of the subsection therefore is not limited to the payment of money allowances.

■ From the foregoing we think we have made plain our opinion that the Deputy Commissioner in his order requiring compensation to be paid to Carlton in the first instance might have required the appellants to furnish him with medical and surgical attendance. The record before us does not disclose any order of the Deputy Commissioner before that of May 7, 1935, requiring the appellants to furnish Carlton with medical and surgical attendance, nor does it disclose any order of the Deputy Commissioner terminating medical and surgical attendance. The settlement made by Carlton with his employer and the insurance carrier is not part of the record. Until the contrary be shown we must consider that Carlton's right to medical and surgical attendance remains unimpaired.

As we have stated, the record must be deemed to be incomplete and insufficient in that the orders referred to, the early record before the Deputy Commissioner and the terms of the settlement made by Carlton do not appear. Upon the record before us, however, for the reasons indicated, we can perceive no reason why the decree of the District Court of December 8, 1937 should be reversed or in any wise modified.

So regarding, the decree of the Court below is affirmed.