Clemmie M. HENRY, widow of Wilson R. Henry, Petitioner,

v.

GEORGE HYMAN CONSTRUCTION COMPANY and Maryland Casualty Company, Respondents.

No. 83–2099.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 1984.

Decided Dec. 7, 1984.

---

Mark J. Brice, Landover, Md., with whom Joseph H. Koonz, Jr., Carolyn McKenney and Roger C. Johnson, Landover, Md., were on the brief, for petitioner.

William J. Donnelly, Jr., Washington, D.C., for respondent George Hyman Const. Co., et al.

Marianne Demetral Smith and Donald S. Shire, Attys., Dept. of Labor, Washington, D.C., entered appearances for respondent, Director, Office of Workmen's Compensation Programs, Dept. of Labor.

Before TAMM, WILKEY and EDWARDS, Circuit Judges.

HARRY T. EDWARDS, Circuit Judge:

Section 8(c)(4) of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA")[1] provides for scheduled benefits for specified periods of time for employees who are permanently partially disabled from a work-related injury. In this case, the petitioner, Clemmie M. Henry, seeks review of an order of the Benefits Review Board, United States Department of Labor ("the Board"), denying her claim to survivor's benefits in a scheduled award due her husband under section 8(c)(4). In rejecting Mrs. Henry's claim, the Board ruled that scheduled benefits due at the time of an employee's death may be paid to survivors under the LHWCA only where an employee "dies from causes other than the injury,"[2] not where, as here, an employee dies from causes related to the work injury that triggered the scheduled award.[3] We find that, by looking solely to section 8(d)(1)

and failing to correctly construe section 8(d)(2)[4] of the statute, the Board improperly denied Mrs. Henry survivor's benefits in the scheduled award due her husband at the time of his death. Accordingly, we set aside that portion of the Board's order denying these benefits and remand to the Board for the appropriate disposition consistent with this opinion.

The petitioner also challenges the applicability of the "special fund"[5] to this case on the ground that it prevents her from negotiating a lump sum settlement of her benefits. However, because the petitioner has no significant interest in the source of her compensation, we hold that Mrs. Henry lacks standing to appeal the applicability of the special fund.

## I. BACKGROUND

The facts of this case, set forth here as found by the Administrative Law Judge ("ALJ"), are not in dispute.[6] The petitioner's decedent, Wilson R. Henry, a diabetic, was injured on April 8, 1976, while working as a rodman for George Hyman Construction Company ("Hyman"). A large section of steel fell on his right foot, fracturing one toe and dislocating another. The injury "initiated a chain of events," resulting first in the amputation of the dislocated toe on July 4, 1976, and later in an amputation of the right leg below the knee on July 19, 1976. A third surgical procedure, a stump revision, led to still further healing complications but, despite initial improvement, Mr. Henry died from cardiac arrest on October 6, 1976. The parties have stipulated

---

**1.** 33 U.S.C. § 908(c)(4) (1982). The LHWCA is applicable to this claim under § 1 of the District of Columbia Workmen's Compensation Act, previously codified at D.C.CODE ANN. § 36–501 (1973). Application of the LHWCA to the District of Columbia has been superseded by the District of Columbia Worker's Compensation Act, D.C.CODE ANN. §§ 36–301 to 345 (1981 & Supp.1983). All statutory references herein are to the LHWCA, 33 U.S.C. §§ 901–50 (1982).

**2.** This language appears at 33 U.S.C. § 908(d)(1) (1982). As will be made clear in this opinion, we reject the Board's reliance on this provision as a basis for denying Mrs. Henry's claim.

**3.** *Clemmie M. Henry v. George Hyman Constr. Co.,* 15 B.R.B.S. 475, 480 (1983).

**4.** 33 U.S.C. § 908(d)(2) (1982).

**5.** 33 U.S.C. § 908(f) (1982). The special fund limits an employer's liability for disability payments to 104 weeks in a case where a work-related injury exacerbates a pre-existing manifest condition or disability.

**6.** Decision and Order of the Administrative Law Judge ("ALJ Order"), No. 73–DCWC–106 (1980), *reprinted in* Appendix to Brief for Appellant at 3a–4a, 8a.

that Mr. Henry's death arose out of and in the course of his employment. Hyman voluntarily paid Henry temporary total disability benefits from the date of injury to the date of death, and then paid death benefits to his survivors according to the statutory formulae.[7]

At the initial hearing before the ALJ, Mrs. Henry claimed that, as her husband's survivor, she was entitled to any unpaid amounts on the scheduled benefits due her husband under section 8(c)(4) of the LHWCA for the loss of his foot. That section provides disability benefits for workers who are permanently partially injured. The ALJ held that the petitioner was not entitled to those benefits because, in his view, the decedent was permanently *totally* disabled—rather than permanently *partially* disabled—at the time of his death.[8] The ALJ reasoned that any section 8(c)(4) benefits for permanent partial disability were thus "subsumed in the whole." [9]

During the administrative hearing, Hyman claimed that section 8(f) of the statute applied to this case because Mr. Henry's diabetes was a pre-existing disability. Section 8(f) limits an employer's liability to 104 weeks of benefits where an injury increases a manifest prior disability or condition and provides that the rest of the award be paid from a special fund.[10] The ALJ found that Hyman was entitled to special fund relief because decedent's pre-existing diabetes and vascular disorder both increased the risk of injury and contributed to the seriousness of the injury sustained on April 8, 1976.[11]

The petitioner appealed the ALJ's findings to the Board on July 18, 1980. On July 23, 1980, Hyman moved to strike the portion of claimant's brief concerning section 8(f). The Board granted that motion on September 18, 1980, *Henry v. George Hyman Construction Co.*, B.R.B. No. 80–514 (Sept. 18, 1980) (Order), and hence did not consider the section 8(f) issue on review. Before this court, however, the petitioner reasserts her challenge to the special fund's applicability here.

The Board affirmed the decision of the ALJ that Mrs. Henry was ineligible for a survivor's benefit in a scheduled award, but reversed the ALJ's specific finding that decedent was *permanently* totally disabled at the time of his death. The Board found, instead, that decedent was *temporarily* totally disabled until his death, and that he "had an underlying permanent partial disability at the time of his death." [12] The Board concluded, however, that despite the fact that Mr. Henry's underlying permanent partial disability entitled him to a scheduled award, Mrs. Henry was not enti-

---

7. *See* 33 U.S.C. §§ 908(b) and 909 (1982).

8. ALJ Order, *reprinted in* Appendix to Brief for Appellant at 8a–9a.

9. *Id.* at 9a.

10. Section 8(f), 33 U.S.C. § 908(f), provides in relevant part:

Injury increasing disability: (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provisions of subsection 8(c)(1)–(20), the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater. In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide in addition to compensation under subsections (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only. . . .

(2) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title.

11. Supplemental Decision and Order on Reconsideration of Administrative Law Judge, No. 72–DCWC–106 (1980), *reprinted in* Brief for Appellant at 20a–22a.

12. *Clemmie M. Henry v. George Hyman Constr. Co.*, 15 B.R.B.S. 475, 479 (1983).

tled as a survivor to receive the unpaid award.

In reaching its result, the Board relied on section 8(d)(1), which merely provides that,

[i]f an employee who is receiving compensation for permanent partial disability pursuant to subsection (c)(1)–(20) of this section dies from causes other than the injury, the total amount of the award unpaid at the time of death shall be payable to or for the benefit of his survivors [according to a prescribed formula].[13]

Although section 8(d)(1) clearly does not address the issue at hand, the Board nonetheless read this provision to foreclose the payment of scheduled benefits to survivors whenever the decedent dies of causes related to the compensable injury. As a consequence of its statutory construction, the Board's decision effectively ignored and nullified the express language of section 8(d)(2), which provides that,

[n]otwithstanding any other limitation in section 909 of this title [pertaining to survivors' death benefits], the total amount of any award for permanent partial disability pursuant to subsection (c)(1)–(20) of this section unpaid at time of death shall be payable in full in the appropriate distribution.[14]

Mrs. Henry contends, and we agree, that section 8(d)(2) controls the resolution of her claim. We therefore reverse and remand on this point.

## II. STANDING TO APPEAL THE APPLICABILITY OF THE SPECIAL FUND

The petitioner contends that, because section 8(f) deprives her of the opportunity to obtain a lump sum settlement, she has standing to contest the applicability of the special fund to this case.[15] Hyman responds that petitioner lacks standing because nothing in the LHWCA permits the settlement of a death claim under section 8(i)(A) and because she has no interest in the source of her benefits. We hold that Mrs. Henry does not have standing to appeal the applicability of section 8(f).

The Board's precedents unequivocally establish that a claimant has no interest in the *source* of compensation, and we agree.[16] Moreover, the Board has considered and rejected the contention that, because a claimant is deprived of the opportunity to commute benefits to a lump sum settlement, the claimant has an interest sufficient to confer standing when the special fund applies. The Board has characterized this argument as a "chimera" and stated that:

Even if it is true that special fund benefits cannot be commuted, a proposition for which claimant cites no authority and for which we can find none, this would have no bearing on the proper allocation of liability between employers and the special fund. We will not open section 8(f) deliberations to claimants with such totally insignificant grounds for asserting standing.

*Sims v. Singleton Electric Co.*, 9 B.R.B.S. 1068, 1072 (1978).

Furthermore, in a recent case, in which the Ninth Circuit considered *inter alia* the question whether the Director, Office of Workers' Compensation Programs has

---

13. 33 U.S.C. § 908(d)(1) (1982).

14. 33 U.S.C. § 908(d)(2) (1982).

15. 33 U.S.C. § 921(c) (1982) provides, in relevant part:
    Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States Court of Appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside.

16. *Price v. Greyhound Bus Lines, Inc.*, 14 B.R.B.S. 439, 440 n. 1 (1981), *dismissed for lack of subject matter jurisdiction*, No. 81–1934 (4th Cir. Jan. 4, 1982), *cert. denied*, 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 70 (1982); *Creasy v. Bateson*, 14 B.R.B.S. 434, 437 (1981); *Jackson v. Willamette Iron & Steel Co.*, 13 B.R.B.S. 908, 909 (1981); *Sims v. Singleton Elec. Co.*, 9 B.R.B.S. 1068, 1071–72 (1978); *Nobles v. Children's Hosp.*, 8 B.R.B.S. 13, 16 (1978); *Schuster v. Roger Smith Hotel*, 7 B.R.B.S. 255, 258 (1977).

standing to contest the applicability of section 8(f), the court observed:

> The Director is the *only party* who has a real interest in protecting the financial integrity of the fund; consequently, the ability to petition for review of a Board decision protects the fund against unnecessary payments.

*Director, OWCP v. Cargill, Inc.*, 718 F.2d 886 (9th Cir.1983) (emphasis added).[17]

■ We can find no fault with the foregoing precedent. Accordingly, we uphold the decision denying petitioner's claim of standing under section 8(f).

### III. SURVIVORS' RIGHTS TO A SCHEDULED AWARD FOR PERMANENT PARTIAL DISABILITY

#### A. *Statutory Framework*

Petitioner's claim with respect to scheduled benefits implicates section 8 and 9 of the LHWCA, which provide respectively for disability and death benefits. Section 8 classifies four types of benefits: (1) permanent total disability, (2) temporary total disability, (3) permanent partial disability, and (4) temporary partial disability benefits. Benefits for permanent partial disability can be either scheduled, as defined in sections 8(c)(1)–(20),[18] or unscheduled under section 8(c)(21).[19] Except for *scheduled* permanent partial disability benefits, all benefits last for "the continuance" of the disability.[20] Scheduled permanent partial disability benefits are, however, awarded for a set number of weeks depending on the disability. For example, Mr. Henry's injury is defined in the schedule under section 8(c)(4),[21] which provides compensation for 205 weeks. Section 8(d)[22] outlines survivors' benefits in scheduled and unscheduled permanent partial disability awards.

■ Section 9 grants death benefits and funeral expenses not exceeding $1000 to specified survivors in only two instances: (1) where the "injury causes death" or (2) where a permanently *totally* disabled employee "dies from causes other than the injury."[23]. Thus, survivors of an employee who dies after suffering a permanent *partial* disability may collect death benefits under section 9 *only* if the compensable injury causes the death.

#### B. *The Board's Findings Regarding Mr. Henry's Condition Just Prior to and at the Time of Death*

Although the ALJ accepted the parties' stipulation that Mr. Henry was *temporari-*

---

**17.** *See also Director, OWCP v. Newport News,* 676 F.2d 110, 114 (4th Cir.1982) ("Our conviction [that the Director has standing] is strengthened by the obvious fact that *only the Director* has any real interest in protecting the fund against unjustified payments. It is to the financial advantage of the employer for payments to be taken in part from the fund, and *the employee involved is interested only in being paid, not in the source from which his payments come.*") (emphasis added).

Our own precedent in *Director, OWCP v. Brandt Airflex Corp.,* 645 F.2d 1053 (D.C.Cir. 1981), is not to the contrary. In *Brandt,* the claimant and the Director both petitioned for review of the portion of the Board's decision concerning the applicability of *section 8(f).* Brandt moved to dismiss those petitions on the basis that both parties lacked standing under section 21(c). On July 26, 1979, a panel of this court denied Brandt's motions in a *per curiam* order. We did not directly address the issue of a claimant's standing to petition for review of section 8(f) applicability. Likewise, the published opinion in *Brandt* did not discuss the standing issue, other than to note that the court would abide by the *per curiam* order denying

Brandt's motions to dismiss as "the law of the case," because "it is not 'plainly wrong' nor will it 'work manifest injustice.'" *Id.* at 1055 n. 4 (quoting *Brown v. Gesellschaft Fur Drahtlose Telegraphie,* 104 F.2d 227, 228 (D.C.Cir.), *cert. denied,* 307 U.S. 640, 59 S.Ct. 1038, 83 L.Ed. 1521 (1939)). Although *Brandt* is admittedly unclear on the issue, there was no need for the court to reach the question of claimant standing under section 8(f) because the Director clearly had standing to pursue the matter. *See, e.g., Shahady v. Atlas Tile & Marble Co.,* 673 F.2d 479, 483–84 (D.C.Cir.1982).

**18.** 33 U.S.C. § 908(c)(1)–(20) (1982).

**19.** 33 U.S.C. § 908(c)(21) (1982).

**20.** *See* 33 U.S.C. § 908(a), (b), (c)(21) and (e) (1982).

**21.** 33 U.S.C. § 908(c)(4) (1982).

**22.** 33 U.S.C. § 908(d) (1982).

**23.** 33 U.S.C. § 909 (1982).

*ly* totally disabled from the date of injury to his death, he nonetheless found that decedent was *permanently* totally disabled at the time of his death and would have remained permanently totally disabled had he lived. If Mrs. Henry is eligible to receive her late husband's scheduled award, the award must be available either concurrently with the temporary total disability payments that Mr. Henry received prior to his death, or consecutively to those payments. The ALJ's findings that Mr. Henry was *permanently* totally disabled, however, precluded an award for a scheduled disability because the statute provides that scheduled benefits shall be paid in addition to other compensation only in the cases of *temporary* total disability or *temporary* partial disability.[24]

On appeal to the Board, Mrs. Henry contested the ALJ's finding that decedent was *permanently* totally disabled at the time of death. The Board found that, in reaching this determination, the ALJ had not focused on Mr. Henry's condition during the period between injury and death, but had impermissibly speculated on what Mr. Henry's condition would have been had he survived—a question concerning which *no* evidence was presented. The Board also found no evidence to support a finding of permanency and therefore reversed the ALJ's findings. Relying on the record evidence before it, the Board found that Mr. Henry was *temporarily* totally disabled until death and had an "underlying perma-

nent partial disability at the time of his death."[25] These findings are not contested by either party in this appeal and they are clearly supported by substantial evidence in the record; accordingly, we adopt the Board's findings as the basis for our legal inquiry.[26]

Hyman does not seriously dispute the Board's findings of a temporary total disability with an underlying permanent partial disability.[27] However, Hyman advances the contention that an award of temporary total disability may not be concurrent with a scheduled award. In support of this proposition, Hyman cites *Rupert v. Todd Shipyards Corp.*, 239 F.2d 273 (9th Cir.1956), where the Ninth Circuit denied concurrent awards for *permanent total* and scheduled permanent partial disability, stating:

> The view that § 8(c) sets forth "a series of classifications of injuries for permanent partial disability" and is not applicable to cases of "permanent total disability" ... finds support in the language of § 8(c) providing for "permanent partial disability" which expressly declares that awards thereunder shall be "in addition to" compensation for "temporary total disability" and for "temporary partial disability" ... *but significantly omits any mention of subdivision (a) covering cases of "permanent total disability."*

*Id.* at 276 (emphasis added).[28] As may be seen from its holding, *Rupert* is plainly

---

**24.** Section 8(c) provides in relevant part:

Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 66⅔ per centum of the average weekly wages, *which shall be in addition to compensation for temporary total disability or temporary partial disability* paid in accordance with subsection (b) or subsection (e) of this section, respectively....

33 U.S.C. § 908(c) (1982) (emphasis added).

**25.** *Clemmie M. Henry v. George Hyman Constr. Co.,* 15 B.R.B.S. 475, 479 (1983).

**26.** We note in passing that, in reaching its findings, the Board adhered to the proper scope of its review of the ALJ's factual findings, basing its reversal upon lack of substantial record evi-

dence. *See New Orleans Stevedores v. Turner,* 661 F.2d 1031, 1037 (5th Cir.1981).

**27.** The appellee has attempted to confuse the issue by claiming that "[t]he decedent was not partially disabled but was totally disabled up until the time of his death." Brief for Appellee at 7. This characterization conveniently ignores the Board's finding that Mr. Henry had an *underlying permanent partial disability* at the time of his death.

**28.** *See also Jacksonville Shipyards, Inc. v. Dugger,* 587 F.2d 197, 198 (5th Cir.1979) ("In cases of *permanent total* disability, the schedules set forth in section 8(c) are inapplicable.") (emphasis added); and *Paiement v. Bath Iron Works Corp.,* 11 B.R.B.S. 767, 769 (1980).

Hyman also cites two decisions of the Benefits Review Board, *Fuduli v. Maresca Boat Yard,*

inapposite; indeed, if anything, the decision of the Ninth Circuit implicitly rejects the position here advanced by Hyman.

■ In light of the plain language of the statute, we hold that a scheduled award for permanent partial disability under section 8(c)(4) may be paid concurrently with an allowance for temporary total disability. Hyman's arguments to the contrary are unavailing.

C. *Survivors' Rights to a Scheduled Award for a Permanent Partial Disability Where the Employee Dies from a Cause Related to the Injury*

Having established that the decedent had a temporary total disability with an underlying permanent partial disability, thus justifying concurrent awards, the principal issue that we confront is whether the survivors of a permanently partially disabled employee, who subsequently dies from a cause related to his injury, are entitled to any unpaid amounts due the decedent under scheduled awards. Before analyzing this central issue, however, we pause to clarify certain collateral issues.

All the parties agree, either through stipulation, or in their briefs, or in answers to questions during oral argument, that: (1) if decedent had lived, he would have been entitled to a scheduled award under section 8(c)(4) even if he had immediately returned to work at a higher rate of compensation than before the injury; (2) a scheduled award under the LHWCA is based mostly upon a concept of damages and does not require proof of loss of wages; (3) disability and death are two separate and distinct causes of action; and (4) Mrs. Henry is entitled to death benefits under section 9 regardless of our disposition here. We will amplify on these points briefly to give a full explanation of our holding in favor of petitioner in this case.

1. *Discussion of Collateral Issues*

■ First, the parties agree that if Mr. Henry had survived he would have been entitled to a permanent partial disability award for the loss of his leg below the knee.[29] This would be true even had Mr. Henry returned to work immediately and been compensated at a higher rate than prior to his injury. This result accords with accepted precepts of workmen's compensation law. As Professor Larson states:

> Permanent partial schedule awards are based on medical condition after maximum improvement has been reached, and ignore wage loss entirely. Fixed payments for loss of specified members are due even if the claimant during the period is back at work at higher wages than before.

*Inc.*, 7 B.R.B.S. 982 (1978), and *James v. Bethlehem Steel Corp.*, 5 B.R.B.S. 707 (1977), for the proposition that Mr. Henry, having received *temporary* total disability benefits until his death, could not receive a scheduled award. Brief for Appellee at 9. *Fuduli* considered a different issue—whether there could be concurrent awards for *scheduled* and *unscheduled* permanent partial disability—and is inapposite here. In *James*, the Board disallowed concurrent or "overlapping" awards for *temporary* total and permanent partial disability. *James* is distinguishable, however, because the employee lived and could collect his scheduled award once the temporary total benefits lapsed. In any case, *James* was based on the authority of *Rupert v. Todd Shipyards*, 239 F.2d 273 (9th Cir.1956), and appears to misinterpret *Rupert's* holding which, as shown above, disallows concurrent awards only in the case of *permanent* (not temporary) total disability. *Wilkosz v. Symington Gould Corp.,* 14 N.Y.2d 739, 250 N.Y.

S.2d 297, 199 N.E.2d 387 (1964), cited by Hyman, is also inapposite since it involved a *permanent* total disability—not a *temporary* total disability—award in conjunction with a scheduled award.

The principal treatise in this area of the law confirms that scheduled awards are "added to the allowance for temporary total disability." 2 A. Larson, THE LAW OF WORKMEN'S COMPENSATION § 258.15, at 10–217 (1983).

29. On this point, the Board stated:

> Despite the fact that decedent was temporarily totally disabled during the period before his death, a certain minimum permanent partial disability existed and was part of his temporary total disability. If decedent had lived, his condition might have changed, *but at a minimum he would have retained a permanent partial disability under Section 8(c)(4)*. *Clemmie M. Henry*, 15 B.R.B.S. at 479 (emphasis added).

2 A. Larson, THE LAW OF WORKMEN'S COM-
PENSATION § 57.13, at 10–24 (1983).

■ The foregoing proposition flows
from the fact that compensation for sched-
uled losses under sections 8(c)(1)–(20) of the
LHWCA is based upon a damages concept
rather than loss of wage-earning capacity.
Although scheduled awards are keyed to
pre-injury earnings, no proof of wage loss
is required:

> [I]f the injury is of a kind specifically
> identified in the schedule set forth in
> §§ 8(c)(1)–(20) of the Act, 33 U.S.C.
> §§ 908(c)(1)–(20), the injured employee is
> entitled to receive two-thirds of his aver-
> age weekly wages for a specific number
> of weeks, regardless of whether his earn-
> ing capacity has actually been impaired.

*Potomac Electric Power Co. v. Director,
OWCP,* 449 U.S. 268, 269, 101 S.Ct. 509,
510, 66 L.Ed.2d 446 (1980); *see also,* 2 A.
Larson, THE LAW OF WORKMEN'S COMPENSA-
TION § 57.14(c), at 10–35.[30]

Second, it is uncontested that Mrs. Henry
is entitled to receive death benefits under
section 9 of the LHWCA regardless of the
disposition of the scheduled benefits issue.
As noted above, the parties have stipulated
that Mr. Henry's injury and death "arose
out of and in the course of" his employ-
ment. Section 9 unequivocally provides for
death benefits to specified survivors—in-
cluding the widow—of an employee who
dies from work-related injuries. Since Mrs.
Henry admittedly is a designated survivor

under the statute, appellee does not chal-
lenge her entitlement to death benefits.

Third, there is no disagreement that sec-
tion 8 disability benefits are separate from
section 9 death benefits. The case law
clearly establishes two separate causes of
action, one for disability lying with the
disabled employee, and one for death lying
with specified survivors of the decedent.
We affirmed this principle as long ago as
1942 when we held:

> [D]ependents of an employee whose inju-
> ry results in death are entitled to death
> benefits under Section 9, regardless of
> the compensation paid to him for disabili-
> ty until death; ... a fair interpretation
> of the Act as a whole demonstrated that
> Congress had established two separate
> rights—the one (Sec. 8) compensation for
> injury payable to the injured employee,
> and the other (Sec. 9) death benefits pay-
> able to his widow and children; and that
> consequently a partial discharge of one
> has no effect on the other.

*Hitt v. Cardillo,* 131 F.2d 233, 234 (D.C.
Cir.1942), *cert. denied,* 318 U.S. 770, 63
S.Ct. 760, 87 L.Ed. 1140 (1943).[31]

More recently, a line of cases has con-
sidered the question whether, in a case
where an employee was injured before the
1972 amendments to the LHWCA but died
after the effective date of the amendments,
death benefits should be computed accord-
ing to the more generous post-1972

---

**30.** *See also Bethlehem Steel Co. v. Cardillo,* 229
F.2d 735, 735–36 (2d Cir.), *cert. denied,* 351 U.S.
950, 76 S.Ct. 847, 100 L.Ed. 1474 (1956); *Travel-
ers Ins. Co. v. Cardillo,* 225 F.2d 137, 144 (2d
Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100
L.Ed. 800 (1955); *Ladner v. Secretary of Health,
Educ. and Welfare,* 304 F.Supp. 474, 476 (S.D.
Miss.1969); *Gulf Stevedore Corp. v. Hollis,* 298
F.Supp. 426, 430 (S.D.Tex.1969), *cert. denied,*
400 U.S. 831, 91 S.Ct. 63, 27 L.Ed.2d 62 (1970);
*Cox v. American Store Equip. Corp.,* 283 F.Supp.
390, 394 (D.Md.1968); *Greto v. Blakeslee,* 10
B.R.B.S. 1000, 1003 (1979).

**31.** *See also Hampton Roads Stevedoring Corp. v.
O'Hearne,* 184 F.2d 76, 79 (4th Cir.1950) ("[A]s
construed by the Courts in several cases, the act
gives two separate rights, one relating to com-
pensation for injury payable to the injured em-
ployee, and the other relating to death benefits
payable to the dependents. When death occurs,

a new cause of action arises."); *International
Mercantile Marine Co. v. Lowe,* 93 F.2d 663, 664
(2d Cir.), *cert. denied,* 304 U.S. 565, 58 S.Ct. 948,
82 L.Ed. 1532 (1938) ("But the disability benefits
fixed by section 8 of the act and the right of the
widow to death benefits under section 9 are
different. They have different claimants there-
to ...[,] were separately provided for by sepa-
rate actions of the act and accrue on different
bases."). *See also Travelers Insurance Co. v.
Toner,* 190 F.2d 30 (D.C.Cir.), *cert. denied,* 342
U.S. 826, 72 S.Ct. 48, 96 L.Ed. 624 (1951); *Penn-
sylvania Jersey Welding Co. v. Lowe,* 183 F.2d
936, 937 (3d Cir.1950); *Union Stevedoring Corp.
v. Norton,* 98 F.2d 1012, 1017 (3d Cir.1938).
*Accord, Morris v. Joseph F. Nebel Co.,* 4 B.R.B.S.
143, 145 (1976); *Spence v. Terminal Shipping
Co.,* 2 B.R.B.S. 308, 315 (1975), *aff'd on other
grounds,* 591 F.2d 985 (4th Cir.1979).

LHWCA formula. In all of those cases, employers or insurance companies argued that the *injury* triggered the application of the LHWCA and, therefore, that the pre-1972 death benefits formula should apply. In every case, however, courts and the Board reasoned that, since death and disability were two separate causes of action, death occurring after the effective date of the 1972 amendments would trigger the more generous benefits available under those amendments, notwithstanding the fact that the injury which caused death occurred prior to 1972.[32]

This conceptual distinction between disability and death benefits is important to this case because it eliminates the contention that there will be an impermissible "double recovery" if Mrs. Henry receives both death benefits and Mr. Henry's scheduled award. The contention that this alleged "double recovery" is impermissible is also belied by Hyman's acknowledgement at oral argument that, if Mr. Henry had lived for several months or years and returned to work at higher pay, he would still have been entitled to his scheduled award. His survivors would nonetheless have been entitled to death benefits as long as he died from his compensable or work-related injuries. Finally, as noted above, the statute itself provides for concurrent payments in the case of scheduled awards and either total or partial temporary disability.[33]

■ We also reject Hyman's argument that a disposition in Mrs. Henry's favor here would result in future awards of absurd proportions. Specifically, Hyman poses a hypothetical whereby the wife of an employee who lost two legs and one arm in an industrial accident and died of those injuries two weeks later would be entitled to death benefits and 888 weeks (17 years) of scheduled benefits for the lost limbs and permanent total disability benefits due to the statute's conclusive presumption that loss of two legs constitutes permanent total disability. Brief for Appellee at 7–8. The latter hypothesis is, however, simply incorrect since the statute does not permit scheduled awards to be paid in addition to *permanent* total disability. *See Rupert v. Todd Shipyards Corp.*, 239 F.2d 273, 276 (9th Cir.1956). As for the multiple awards for loss of limbs where there is no permanent total disability, we simply note that the statute expressly provides for consecutive scheduled awards in section 8(c)(22).[34] Obviously, it is not the province of this court to second-guess legislative judgments on schedules for workmen's compensation awards. Rather, our only legal task is to determine what disability benefits Mr. Henry was entitled to receive, and whether those pass to his survivors under the statute.

### 2. *Survivors' Interests in Scheduled Awards*

We now turn to the critical question before the court. Having established that Mr. Henry was entitled to a scheduled permanent partial disability award, that he could receive that award in addition to his *temporary* total disability benefits, and that the death benefit award is conceptually distinct, we must determine whether the scheduled award can pass to his survivors. Resolution of that issue involves the construction of section 8(d) of the LHWCA.

---

**32.** *Puig v. Standard Dredging Corp.*, 599 F.2d 467, 469 (1st Cir.1979); *St. Louis Shipbuilding & Steel Co. v. Casteel*, 583 F.2d 876, 877–78 (8th Cir.1978); *State Ins. Fund v. Pesce*, 548 F.2d 1112, 1114 (2d Cir.1977); *Rouse v. Norfolk, Baltimore & Carolina Lines, Inc.*, 2 B.R.B.S. 11, 13–14 (1975), *aff'd on other grounds*, 539 F.2d 378 (4th Cir.), *cert. denied*, 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1976).

**33.** *See also Hastings v. Earth Satellite Corp.*, 628 F.2d 85 (D.C.Cir.), *cert. denied*, 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980) (allowing con-

current awards for an unscheduled disability and permanent total disability).

**34.** Section 8(c)(22) states in relevant part:

In any case in which there shall be a loss of, or loss of use of, more than one member ... set forth in paragraphs (1) to (19) of this subsection, *not amounting to permanent total disability*, the award of compensation shall be for the loss of, or loss of use of, each such member or part thereof, which awards shall run consecutively ....

33 U.S.C. § 908(c)(22) (1982) (emphasis added).

We begin with the plain language of the statute, but we are aided in our interpretation by the structure of section 8(d), by the legislative history of the 1972 amendments and by the policies underlying the LHWCA.

*The Plain Language of the Statute*

Section 8(d) provides, in relevant part:

(1) If an employee who is receiving compensation for permanent partial disability pursuant to subsection (c)(1)–(20) of this section dies from causes other than the injury, the total amount of the award unpaid at the time of death shall be payable to or for the benefit of his survivors, as follows ...

....

(2) Notwithstanding any other limitation in section 909 of this title, the total amount of any award for permanent partial disability pursuant to subsection (c)(1)–(20) of this section unpaid at time of death shall be payable in full in the appropriate distribution.

(3) If an employee who was receiving compensation for permanent partial disability pursuant to subdivision (c)(21) of this section dies from causes other than the injury, his survivors shall receive death benefits as provided in section 909(b)–(g) of this title ....

(4) An award for disability may be made after the death of the injured employee ....

33 U.S.C. § 908(d)(1)–(4) (1982). In construing these provisions, the Board made the rather astonishing finding that, under the terms of the statute, section 8(d)(2) comes into play only "where section 8(d)(1) benefits are warranted" (*i.e.*, where an employee dies from causes other than the injury).[35] However, there is absolutely nothing in sections 8(d)(1) or 8(d)(2) to even suggest such an interpretation of the statute.

The effect of the Board's construction is to read section 8(d)(2) out of the statute. According to the Board, the only function of section 8(d)(2) is "to emphasize that in the case of a scheduled permanent partial disability qualifying under section 8(d)(1), the limitations of Sections 9(a)–(g) are inapplicable."[36] We find this analysis to be wholly untenable and a gross distortion of the plain meaning of section 8(d)(2). Section 8(d)(1) on its face does not apply to this case; it addresses situations where a decedent entitled to a scheduled award dies from causes unrelated to his injury. Section 8(d)(2), on the other hand, addresses situations, like Mr. Henry's, where the employee died from the compensable injury.

The plain language of section 8(d)(2) states that the "total amount of any [scheduled] award ... unpaid at time of death shall be payable in full in the appropriate distribution." Since the section specifically refers to awards "unpaid at time of death," this can only have meaning in connection with survivors' rights. This understanding is reinforced by section 8(d)(4) which unequivocally provides for disability awards to be made after death. *See Muscella v. Sun Shipbuilding & Dry Dock Co.*, 8 B.R.B.S. 830, 831 (1978). Moreover, since the statute applies the section 8(d)(2) scheduled payment rule "[n]otwithstanding any other limitation in section 909 of this title," and, since section 909 can *only* apply to decedents who die from a *work-related injury*, section 8(d)(2) can *only* refer to scheduled amounts to be paid to survivors of permanently partially disabled decedents who die from their injuries.

*The Structure of Section 8(d)*

The structure of section 8(d) supports this construction. Section 8(d)(1) provides the payment rule for *scheduled* benefits to survivors whose decedent dies from *unrelated* causes. Section 8(d)(2) describes survivors' interests in *scheduled* awards where an employee dies of his injuries. Section 8(d)(3) provides for death benefits to accrue under section 9 to survivors of a decedent—on an *unscheduled* award for permanent partial disability—who dies from *unrelated* causes. The survivors of an employee who receives an unscheduled award but dies from *related* causes recover

---

**35.** *Clemmie M. Henry,* 15 B.R.B.S. at 479.

**36.** *Id.* at 480.

death benefits directly under section 9. Despite this orderly and logical structure of section 8(d), the Board concluded that section 8(d)(2) must apply to those who die from unrelated causes because of the limitation found in section 8(d)(1). This is a nonsensical reading of the statute and neither the Board nor Hyman has given a plausible reason to accept this proposition, nor have they cited any authority that supports it. Indeed, their contentions are belied by the plain language and structure of section 8(d). The legislature *expressly* limited the application of sections 8(d)(1) and 8(d)(3) to those who die from unrelated causes. Had it intended section 8(d)(2) to be limited as well, it surely would have so stated.

The Board's explanation—that section 8(d)(2) exists merely to ensure payment of section 8(d)(1)'s benefits to survivors "in full" without section 9's limitations—is erroneous. Section 8(d)(1) itself already provides that "the total amount unpaid at death" shall go to survivors. As shown above, section 9 only applies in circumstances where a permanently partially injured employee dies from his injuries; thus, its limitations can never apply to those eligible for section 8(d)(1) benefits, *i.e.,* those who die from unrelated causes. The Board's explanation is a *non sequitur.*

*Legislative History*

■ Although the legislative history of the 1972 amendments to the LHWCA does not address the issue here before the court, it is clear that "expansion of survivors benefits" was a principal purpose of the 1972 amendments. S.REP. No. 1125, 92d Cong., 2d Sess., at 2 (1972). Prior to 1972, section 8(d) provided:

Any compensation to which any claimant would be entitled under subdivision (c) excepting subdivision (c–21) shall, notwithstanding death arising from causes other than the injury, be payable to and

for the benefit of the following [survivors] .... [37]

Under this provision, survivors of an employee with a permanent partial disability were entitled to survivors' benefits in a scheduled award, whether death arose from causes related to, or other than, the injury. Under the amended statute, Congress simply broke down the existing provision for scheduled awards into two parts— section 8(d)(1) to address unrelated death cases and section 8(d)(2) to provide for related death cases. Section 8(d)(3) was added to ensure death benefits for the survivors of those who had unscheduled disabilities and died from causes other than their injuries. Section 9, which previously provided death benefits only where an employee died from the injury, was amended to include benefits where a permanently totally disabled employee died from unrelated causes. Nothing was added to the statute, and nothing appears in the legislative history, even to suggest that survivors of employees who died from related causes were to be denied entitlement to scheduled benefits. Quite the contrary, Congress indicated that "specific provision [was being] made for protecting immediate survivors and making sure that scheduled awards are still paid in full." [38]

*Policy Considerations*

We find that the result we reach comports fully with the policies underlying the LHWCA. First, as indicated above, there is no case law or other authority which supports the Board's interpretation of section 8(d)(2). Second, we have shown that, consistent with general theories of workmen's compensation, scheduled benefits attach irrespective of the actual amount of lost earnings. Third, we reject the Board's unfounded suggestion that scheduled payments under the LHWCA should be made to survivors where a lost limb is attributable to work-related injuries and the worker dies from *unrelated* causes, but not where

**37.** Longshoremen and Harbor Workers Compensation Act, ch. 509, 44 Stat. 1424, 1427 (1927) (current version at 33 U.S.C. § 908(d) (1982)).

**38.** S.REP. No. 1125, 92d Cong., 2d Sess., at 6 (1972); *see also* H.R.REP. No. 1441, 92d Cong., 2d Sess. at 3 (1972), U.S.Code Cong. & Admin.News 1972, 4698, at 4701.

the worker dies from *related* causes. We can find no support, either in the statute or in the legislative history, for such an anomalous result.

■ We believe that it is perfectly rational for Congress to establish separate guidelines for death benefits which are intended to compensate surviving dependents for lost support, and for scheduled benefits, which are intended to replace damages for the employee or his estate. Compensation for the lost limb is always paid out to survivors under the statute, whether the employee dies from unrelated causes (under section 8(d)(1)), or related causes (under section 8(d)(2)). The fact that *death* benefits are not available to survivors of employees receiving scheduled benefits who die from unrelated causes in no sense compels the inverse conclusion that *disability* benefits are therefore unavailable to survivors who are eligible for death benefits because their decedent died from the compensable injury.

Accordingly, we reverse and remand that portion of the Board's order denying Mrs. Henry's section 8(d)(2) claim for a determination consistent with this opinion.

*So ordered.*