Sharon S. SMITH, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent,

and

Washington Metropolitan Area Transit
Authority, Intervenor.

No. 87–34.

District of Columbia Court of Appeals.

Submitted March 9, 1988.
Decided Sept. 29, 1988.

Robert B. Adams, Washington, D.C., for petitioner.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Acting Corp. Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., filed a statement in lieu of brief for respondent.

E. Joseph Fitzpatrick, Jr., with whom Jeffrey R. Miller, Gaithersburg, Md., was on the brief, for intervenor.

Before NEWMAN, TERRY and ROGERS, Associate Judges.

ROGERS, Associate Judge:

In this appeal, we must decide whether an employee's receipt of a schedule award for permanent partial disability under the District of Columbia Workers' Compensation Act, D.C.Code § 36–308(3) (1988 Repl. Vol.), precludes further compensation for temporary total disability benefits under D.C.Code § 36–308(2) where future recurrent pain and discomfort arising out of the same injury cause an additional loss of wages. The respondent District of Columbia Department of Employment Services denied petitioner Sharon S. Smith's application for benefits under § 36–308(2) of the Act for a "flare up" of a previously compensated permanent injury on the ground that she had already received all of the benefits to which she was entitled. We affirm.

## I

Petitioner Sharon S. Smith filed for the payment of benefits under the District of Columbia Workers' Compensation Act (Act), D.C.Code § 36–301 et seq. (1988 Repl. Vol.), for a temporary total disability from December 20, 1984, through February 4, 1985. She testified at a hearing before a hearing examiner in the District of Columbia Department of Employment Services (the agency) that her condition was due to a "flare up" of a permanent partial disability that resulted from accidental injuries to her cervical spine and right shoulder on August 6, 1982, while she was employed as a bus driver by intervenor Washington Metropolitan Area Transit Authority (WMATA). Smith's 1982 injuries caused her to miss approximately seventeen months of work and during this time she received benefits for her temporary total disability. See D.C.Code § 36–308(2). She

returned to work on January 3, 1984, and on June 24, 1984, she and WMATA entered into a stipulation that she had reached maximum medical improvement and was entitled to benefits in the nature of a schedule award, D.C.Code § 36–308(3), for a 5 percent permanent partial disability of her right upper extremity. See D.C.Code § 36–308(3)(A) (arm loss, 312 weeks' compensation). The agency approved the stipulation on July 5, 1984, and Smith received a schedule award of $4,636.94. Thereafter, Smith asserted, she experienced on December 20, 1984, a "flare up" of her permanent partial disability that caused her to miss work until February 4, 1985.[1] It was for this period that she applied for temporary total disability benefits. Following the evidentiary hearing, at which Dr. James Callan testified on behalf of WMATA, the hearing examiner denied her application for benefits.

The hearing examiner accepted Smith's testimony that her December, 1984, disability was due to a "flare up" of her August 6, 1982, disability, but denied her benefits because:

> Once a claimant reaches maximum medical improvement and elects [2] to receive a schedule award rather than an award based on a wage loss, that claimant is no longer entitled to temporary total disability benefits for subsequent periods of temporary total disability when he or she cannot work and loses wages. The nature of a schedule award is to compensate a claimant by paying that claimant for a number of weeks he or she could lose wages from work in the future because of the continuing, disabling effects of a permanent condition.

Thus, in the examiner's view, the schedule award includes payment for future lost

1. Smith apparently also sustained a work related injury to her neck and right shoulder on July 17, 1984, which caused her some discomfort but did not necessitate any time off from work.

2. Although we do not reach the issue, the hearing examiner's use of the word "elects" in the context of the receipt of a schedule award for permanent partial disability may have been erroneous. See Lenaerts v. District of Columbia Dep't of Employment Servs., 545 A.2d 1234,

1236–39 (D.C.1988) (affirming agency interpretation that schedule award provisions are exclusive and no election to seek actual wage loss exists); Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs, 449 U.S. 268, 271, 101 S.Ct. 509, 511, 66 L.Ed.2d 446 (1980) (under federal Longshoremen's and Harbor Workers' Compensation Act, schedule award provisions are exclusive and no election to seek actual wage loss exists).

wages as a result of the continuing effects of the disabling permanent condition.

The Acting Director of the agency affirmed the hearing examiner's decision denying benefits without adopting the examiner's rationale. Instead, the Acting Director relied on legislative history of the Act which showed that the Committee of the Council of the District of Columbia reporting the bill had deleted a provision that would have provided for continuing benefits to disabled employees whose schedule awards have ceased. The Acting Director also found support in the fact that, prior to enacting the Act, the D.C. Council had enacted personnel legislation for District government employees that expressly provided for such continuing benefits. *See* D.C.Code § 1–624.7 (1987 Repl. Vol.).

## II

On appeal, Smith contends that the agency erred in failing to disinguish between permanent and temporary disability benefits. She maintains, without citing authority, that since 1928 [3] the prevailing practice in this and other jurisdictions permitted a person in Smith's situation to recover additional benefits because a person's entitlement to benefits under the various disability categories is unaffected by the receipt earlier of a schedule award for permanent partial disability. The only limiting factor to the receipt of such additional benefits, Smith argues, is the claimant's obligation to demonstrate the causal relationship between the original injury and the allegedly disabling condition and to prove disability in fact during the period for which benefits are claimed. WMATA takes the contrary position.

■ This court will uphold the agency's interpretation of the Act unless the interpretation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. D.C.Code §§ 1–1510, 11–722 (1981). Where an administrative

agency is delegated broad authority to administer a statutory scheme, as here, *id.* § 36–302(a); Mayor's Order No. 82–126, 29 D.C.Reg. 2843 (1982), we defer to a reasonable construction of the statute made by the agency. *Thomas v. District of Columbia Dep't of Employment Servs.*, No. 87–376, slip op. at ___ (D.C. August ___, 1988); *Howrey & Simon v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 254, 258 (D.C.1987); *Barbour v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 122, 124 (D.C.1985) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 207–08, 67 S.Ct. 1575, 1582–83, 91 L.Ed. 1995 (1947)); *Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C.1985). The agency's interpretation of the statute it administers is binding on this court unless it conflicts with the plain meaning of the statute or its legislative history. *Nova Univ. v. Educational Inst. Licensure Comm'n*, 483 A.2d 1172, 1190–91 (D.C.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985); *Weaver Bros., Inc. v. District of Columbia Rental Hous. Comm'n*, 473 A.2d 384, 388 (D.C.1984). Indeed, we must sustain the agency's interpretation even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance. *MCM Parking Co. v. District of Columbia Dep't of Employment Servs.*, 510 A.2d 1041, 1045 (D.C.1986); *Lee v. District of Columbia Dep't of Employment Servs., supra* note 3, 509 A.2d at 102.

■ Smith contends specifically that the plain language of D.C.Code § 36–308(3) entitles her to receive temporary total benefits under § 36–308(2) any time a recurrence of a previously compensated permanent injury causes her to miss work for as long as she remains employed by WMATA. Section 36–308(3) provides that disability compensation shall be paid to an employee in the following manner:

---

**3.** Workers' Compensation claims in the District of Columbia were governed by the provisions of the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*

(1976), from 1928 until 1982. D.C.Code § 36–345; *see Lee v. District of Columbia Dep't of Employment Servs.*, 509 A.2d 100, 103 (D.C. 1986).

In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two thirds percent of the employee's average weekly wages *which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with paragraph (2) or (4)* [4] *of this subsection respectively,* and shall be paid to the employee, as follows: [hereinafter the section lists the number of weeks' compensation to which an employee is entitled depending on the body part which is injured].

(Emphasis added.) Thus Smith maintains that the phrase "in addition to" in § 36–308(3) means that her prior receipt of a schedule payment for a permanent partial disability does not preclude her from receiving future temporary total benefits for the same injury under § 36–308(2). This interpretation of § 36–308(3) overlooks, however, another reasonable construction of the phrase "in addition to" which is best illustrated by tracking the Act's compensation provisions in Smith's case, which, in many respects, is a typical employment injury scenario.

Smith received a serious work-related injury in August, 1982, which caused her to miss a substantial period of work. During her convalescense, she sustained a complete loss of wages, and therefore she was entitled to and did receive temporary total benefits under § 36–308(2).[5] Eventually Smith's condition improved so that she was able to return to work on a full-time basis in January, 1984, and her temporary total benefits terminated.[6] Then, between January and June, 1984, her injured shoulder continued to improve although she periodically experienced some discomfort and pain. By June, 1984, her injury had healed as much as it was going to and she reached what is referred to as maximum medical improvement, *i.e.,* a point at which the healing period has ended and stabilization has been reached. *See* 2 A. LARSON, WORKMEN'S COMPENSATION LAW §§ 57.12(b), at 10–17, 57.13, at 10–41 (1987) (hereinafter LARSON).[7] Smith and WMATA entered into a stipulated agreement that she had sustained a 5 percent permanent partial disability, and upon approval by the agency, she received a schedule award under § 36–308(3)(A) of $4,636.94.[8] This schedule award for a permanent partial disability under § 36–308(3) was "in addition to" the temporary total benefits that she had received earlier for the same injury under § 36–308(2).

Although Smith would have us interpret the phrase "in addition to" in § 36–308(3) to require additional temporary total benefits under § 36–308(2), it is clear that nothing in the language of the statute mandates such an interpretation. Furthermore, the legislative history of the Act, relied upon by the Acting Director, sup-

4. The reference to paragraph (4) is a mistake; it is readily apparent from the preceding clause "temporary total disability or temporary partial disability ... respectively" that the phrase should read "in accordance with paragraph (2) or (5)...."

5. D.C.Code § 36–308(2) provides:
In the case of disability total in character but temporary in quality, sixty-six and two thirds percent of the employee's average weekly wages shall be paid to the employee during the continuance thereof.
"Disability" is defined by the Act as "physical or mental incapacity because of injury which results in the loss of wages." D.C.Code § 36–301(8).

6. If Smith had been capable of returning to work only on a part-time basis, she would have been eligible for temporary partial benefits under § 36–308(5).

7. *See Crum v. General Adjustment Bureau,* 238 U.S.App.D.C. 80, 86, 738 F.2d 474, 480 (1984) ("A disability is permanent if it 'has continued for a lengthy period, and it appears to be of lasting or indefinite duration, as distinguished from one in which recovery merely awaits a normal healing period.'") (citations omitted) (federal LHWCA).

8. Smith received compensation for 15.60 weeks. This figure is arrived at by multiplying 312 weeks' compensation for an arm lost, § 36–308(3)(A), times 5 percent. All parties agree that § 36–308(3)(A), which provides the schedule award for an arm lost, was the appropriate category under which to compensate Smith for injuries to her cervical spine and right shoulder. *Cf.* 2 LARSON § 58.13(a).

ports the agency's interpretation of the statute.

Unlike the final version of the Act, the original bill introduced in the D.C. Council contained a provision, § 9(c)(23), that expressly provided for additional temporary total disability benefits to employees whose permanent partial disability benefits had expired.[9] At a later discussion of the proposed bill, two witnesses from the Chesapeake & Potomac Telephone Company urged the Committee that this provision should be deleted because it might make the workers' compensation program "very expensive," it would render "useless" the scheme of classifying injuries, and, in their view, the "employer's obligation has been fulfilled" once the employee has received a schedule award for permanent partial disability.[10] The Committee later adopted an amendment in the nature of a substitute to the bill as introduced,[11] and the version of Bill 3–106 that was passed by the D.C. Council did not include § 9(c)(23). Since the Committee took the affirmative step of deleting a provision which would have provided the additional temporary total disability benefits Smith seeks, and did so after receiving testimony specifically opposing the provision, we infer that Council did not intend to provide such additional benefits after an employee has received a schedule award for the same injury.[12]

This reading of the legislative history is supported by comparing § 9(c)(23) of the originally introduced bill with an analogous provision in the workers' compensation act applicable to employees of the District of Columbia government. The District of Columbia Government Comprehensive Merit Personnel Act of 1978, D.C.Code § 1–601.1 et seq. (1987 Repl.Vol.) (CMPA), provides:

> (b) With respect to any period after payments [of a schedule award] under subsection (a) of this section have ended, an employee is entitled to compensation as provided by the following:
>
> > (1) Section 1–624.5, if the disability is total;
> >
> > or
> >
> > (2) Section 1–624.6, if the disability is partial.

D.C.Code § 1–624.7(b). Significantly, this subsection is immediately preceded by a subsection that provides, "If there is permanent disability ... the employee is entitled to basic compensation ... [which] shall be: ... (3) *In addition* to compensation for

**9.** Bill 3–106, the "District of Columbia Workers' Compensation Act of 1979," the original version of the Act, was introduced on February 15, 1979, and was referred to the Committee on Housing and Economic Development three days later. COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, REPORT ON BILL 3–106: THE DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979, at 22–23 (January 29, 1980) (hereinafter HED COMMITTEE REPORT). It provided in § 9(c)(23) that:

> (23) With respect to any period after payments [of a schedule award] under paragraph (c)(1) through (e)(21) [sic] have terminated, compensation shall be paid as provided in subsections (a) and (b) of this section if the disability is total, or, if the disability is partial, 66⅔ percent of the employee's wage loss....

**10.** A tape of the discussion is available through the Legislative Services Unit of the Council of the District of Columbia. *See also Lenaerts v. Liberty Mut. Ins. Co.,* H & AS No. 84–174 (May 23, 1986) at ___, *reprinted in Lenaerts v. District of Columbia Dep't of Employment Servs., supra* note 2, at 1246–47.

**11.** HED COMMITTEE REPORT, *supra* note 9, at 23. Although the HED Committee report does not expressly refer to § 9(c)(23) or the testimony from the Chesapeake & Potomac Telephone Company witnesses, the amended bill incorporated several of their suggestions and omitted § 9(c)(23) as they had urged. *See Lenaerts v. Liberty Mut. Ins. Co., supra* note 10, at ___, *reprinted in Lenaerts v. District of Columbia Dep't of Employment Servs., supra* note 2, at 1247. Another substitute bill, prepared by the Committee on Public Services and Consumer Affairs, also excluded § 9(c)(23). *See* COMMITTEE ON PUBLIC SERVICES AND CONSUMER AFFAIRS, REPORT ON BILL 3–106, THE DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979 (January 16, 1980) (hereinafter PSCA COMMITTEE REPORT).

**12.** *See Philadelphia Television Broadcasting Co. v. FCC,* 123 U.S.App.D.C. 298, 300, 359 F.2d 282, 284 (1966) (deference to agency's interpretation of its governing statute reinforced where legislative history is silent or marginally helpful); *Isbister v. Boy's Club of Santa Cruz, Inc.,* 144 Cal.App.3d 338, 192 Cal.Rptr. 560, 564 (1983) (rejection of specific provision in bill as introduced indicates legislative intent not to enact deleted provision) (citations omitted), *vacated on other grounds,* 40 Cal.3d 72, 707 P.2d 212, 219 Cal.Rptr. 150 (1985); 2A SUTHERLAND STATUTORY CONSTRUCTION § 48.18, at 224 (4th ed.1984).

temporary total or temporary partial disability." D.C.Code § 1–624.7(a) (emphasis added). Thus, when the Council enacted a workers' compensation system for government employees a year before it enacted a system for private employees, it explicitly provided that temporary total disability benefits would be available notwithstanding the employee's earlier receipt of a schedule award for a permanent partial disability. Had the Council intended to provide the same benefits for private employees, it seems unlikely that it would have deleted a provision which would have accomplished precisely that result.[13] Nor has the Council amended the Act to incorporate into the private workers' compensation system a provision like § 9(c)(23) of the original bill or §§ 1–624.7(a) and (b) of the CMPA.

The agency's denial to Smith of additional temporary total disability benefits also is in accordance with the purpose of the Act and the nature of the benefits available under it. The Act provides a comprehensive scheme for the compensation of employees who are injured in the course of their employment. As part of the *quid pro quo* of requiring an employee to forego suing the employer for such injuries, "the employer is made responsible for all occupational injuries, regardless of fault but the employee loses the right to sue for a tort liability award higher than the compensation benefits." *Grillo v. National Bank of Washington,* 540 A.2d 743, 748 (D.C. 1988) (quoting PSCA COMMITTEE REPORT, at 6).[14]

■ Although the Act displaces the tort system for most work-related injuries, the benefits available under the Act are not conceptually equivalent to tort damages. Unlike the tort system, awards under the Act are not made to compensate for the physical injury itself, but rather to compensate for the disability which results from the injury, and thereby presumably affects earning capacity. 1 LARSON § 2.40, at 10–11 (1985). This is apparent from the Act's definition of disability, which is "physical or mental incapacity because of injury *which results in the loss of wages.*" D.C. Code § 36–301(8) (emphasis added). Thus, injuries that might result in large damage verdicts in tort actions result in small or even no awards at all under the Act.[15] Similarly, the Act does not provide any compensation for pain and suffering regardless of how consequential such damages may be. 1 LARSON § 2.40, at 11; *cf. Tredway v. District of Columbia,* 403 A.2d 732, 735 (D.C.) (no separate recovery for pain and suffering under the Federal Employees' Compensation Act), *cert. denied,* 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 92 (1979). In other words, compensation under the Act is predicated upon the loss of wage earning capacity, or economic impairment, and not upon functional disability or physical impairment.[16] *See, e.g., Cook v. Paducah Recapping Serv.,* 694 S.W.2d 684, 687 (Ky.1985); *Ladner v. Mason Mitchell Trucking Co.,* 434 A.2d 37, 40 (Me.1981), *cert. denied,* 464 U.S. 850, 104 S.Ct. 158, 78 L.Ed.2d 145 (1983); *Marshall Durbin, Inc. v. Hall,* 490 So.2d 877, 880 (Miss.1986); *Mullaney v. Gilbane Bldg. Co.,* 520 A.2d

**13.** *See Western States Newspapers, Inc. v. Gehringer,* 203 Cal.App.2d 793, 799, 22 Cal.Rptr. 144, 148 (1962) ("Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject ... is significant to show that a different intention existed.") (citations omitted); 2A SUTHERLAND STATUTORY CONSTRUCTION § 51.02 (4th ed.1984).

**14.** D.C.Code § 36–304(a) (1981) provides that liability under the Act "shall be exclusive and in place of all liability of such employer to the employee...." The Act includes exceptions not relevant to this appeal. *See* D.C.Code §§ 36–304(b), (d); *Grillo v. National Bank of Washing-*

*ton, supra,* 540 A.2d at 748 (discussing intentional tort and statutory exceptions to exclusivity provisions of the Act).

**15.** For example, while severe and permanent facial disfigurement caused by a negligent automobile driver would probably result in a large damage award in a jury trial, the schedule award compensation for the same disfigurement caused by an employment-related accident would be limited to $3500 under the Act. D.C. Code § 36–308(3)(T).

**16.** *But cf.* 2 LARSON §§ 57.14(e), (f) (noting minority view embracing physical impairment theory).

141, 143 (R.I.1987); *see also* 2 LARSON §§ 57.11, at 10–2, 57.14(a), at 10–46.[17]

Smith misconceives the nature of a schedule award when she argues that because a schedule award for permanent partial disability is arbitrary and payable irrespective of wage loss, the schedule award payment should not be viewed as an advance payment for future temporary total disability, but rather as some "limited redress for injuries which are functionally disabling." A schedule award is intended to compensate only for economic, not physical, impairment. While schedule benefits for permanent partial disability are payable regardless of actual wage loss,[18] and while the number of weeks of compensation applicable to each loss of member is arbitrary,[19]

> [t]he historical evidence is quite clear that the schedule was never intended to be a departure from or an exception to the wage-loss principle. The typical schedule, limited to obvious and easily-provable losses of members, was justified on two grounds: the gravity of the impairment supported a conclusive presumption that actual wage loss would sooner or later result; and the conspic-

uousness of the loss guaranteed that awards could be made with no controversy whatsoever.

2 LARSON § 57.14(c), at 10–54. Although impaired earning capacity need not be proved to receive schedule benefits,

> [t]his is not ... to be interpreted as an erratic deviation from the underlying principle of compensation law—that benefits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, instead of a specifically proved one based on the individual's actual wage-loss experience.

*Id.* § 58.11, at 10–323 –324 (footnotes omitted).

Thus, the fixed and arbitrary amount of compensation for a schedule loss represents a legislative determination that attempts to balance the seriousness of the injury with its likely effect on future earnings potential. *Id.* The fact that the schedule award is payable irrespective of future wages is both to Smith's advantage and disadvantage.[20] Smith was entitled to

---

**17.** As Professor Larson has observed:

> A compensation system, unlike a tort recovery, does not pretend to restore to the claimant what he has lost; it gives him a sum which, added to his remaining earning ability, if any, will presumably enable him to exist without being a burden to others.
>
> If our compensation system is correct, then the amount of compensation awarded may be expected to go not much higher than is necessary to keep the worker from destitution....
>
> \* \* \* \* \* \*
>
> Even among those who contend that the scale of benefits is generally too low, there are few if any who would contend that anything resembling tort principles of amount of recovery should be imported into compensation law. It was never intended that compensation payments should equal actual loss for the reason, if no other, that such a scale would encourage malingering.
>
> 1 LARSON § 2.50, at 11–12.

**18.** *See, e.g., Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs, supra* note 2, 449 U.S. at 269, 101 S.Ct. at 510; *Henry v. George Hyman Constr. Co.,* 242 U.S. App.D.C. 43, 51 & n. 30, 749 F.2d 65, 73 & n. 30 (1984) (citing cases); *Mims & Thomas Mfg. Co. v. Ferguson,* 340 So.2d 920, 921 (Fla.1976); *Mil-*

*ler v. Western Elec. Co.,* 310 Md. 173, 186, 528 A.2d 486, 493 (1987); *Corson v. Brown Products, Inc.,* 120 N.H. 665, 668, 421 A.2d 1005, 1008 (1980); *Fortuna v. Pfizer, Inc.,* 91 A.D.2d 1083, 1084, 458 N.Y.S.2d 317, 318 (1983).

**19.** "The origins of the exact numbers of weeks assigned to losses of particular members are lost in the mists of early compensation history." 2 LARSON § 58.11, at 10–324.

**20.** Smith's case is distinguishable from cases involving a previously stabilized and compensated permanent partial condition which *deteriorates* thereafter and results in further wage loss. The hearing examiner concluded, on the basis of Smith's testimony, that her absence from work between December 20, 1984, and February 4, 1985, was due to a "flare up" of her condition. As the hearing examiner noted, nothing in this decision prevents her from seeking a modification of a schedule award based on changed circumstances. If her condition deteriorates to the point where she can demonstrate a permanent partial disability in excess of 5 percent, she would be statutorily entitled to an additional schedule award under D.C.Code § 36–308(3)(A). D.C.Code § 36–324; *see Snipes v. District of Columbia Dep't of Employment Servs.,* 542 A.2d

receive a schedule award despite her return to work on a full-time basis and even if she were not to miss any work thereafter. Conversely, to the extent that she is forced to miss work in the future because of recurrent pain arising out of the same injury, her compensation is limited to the permanent partial disability award that she has already received. Although the schedule award will be overly generous in some cases, and grievously inadequate in others, such a result inheres in the very nature of compensation schemes.[21]

The agency interpretation of the Act is that once an employee reaches maximum medical improvement and receives a schedule award for permanent partial disability under D.C.Code § 36–308(3), the employee is not entitled to temporary total disability benefits under § 36–308(2) for future wage loss arising out of the same injury. This interpretation is consistent with the Act's language, its legislative history, and the nature of its disability benefits scheme. Accordingly, we affirm the agency's decision denying Smith temporary total disability benefits on the ground that she was ineligible because of prior receipt of a schedule award for permanent partial disability arising out of the same injury.

832, 835 (D.C.1988); *see also* 3 LARSON §§ 81.-30–.33 (1983).

**21.** Viewing the schedule award as compensation in the nature of a tort remedy, as Smith urges, would also lead to manifestly unjust results. The calculation of a schedule award for a permanent partial disability is based on the employee's salary. D.C.Code § 36–308(3)(A); *see McDaniels v. District of Columbia Dep't of Employment Servs.*, 512 A.2d 990 (D.C.1986) (calculation of award). For example, if employee A earns a salary ten times that of employee B, and both employees suffer an identical schedule injury, *e.g.*, the loss of an eye, employee A will receive a schedule award ten times that of employee B. The difference in the amount of compensation is rational only if the award is viewed as an economic replacement mechanism, for as Professor Larson has observed, "If what is being compensated for has nothing to do with loss of earning capacity, of what relevance are prior earnings?" 2 LARSON, § 57.14(g), at 10–72.