*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-AA-923

RAYBURN L. LEVY, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF
EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, INTERVENOR.

Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-11-151)

(Argued October 10, 2013                    Decided February 6, 2014)

*Benjamin T. Boscolo* for petitioner.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, filed a statement in lieu of brief.

*Donna J. Henderson*, with whom *Carol B. O'Keeffe* and *Mark F. Sullivan* were on the brief, for intervenor.

Before GLICKMAN and MCLEESE, *Associate Judges*, and NEWMAN, *Senior Judge*.

MCLEESE, *Associate Judge*: Petitioner Rayburn Levy challenges a decision of the Compensation Review Board ("CRB") rejecting his claim for workers' compensation as untimely. We vacate and remand for further proceedings, so that the CRB can more fully explain the basis for its decision.

**I.**

In 1992, Mr. Levy injured his left knee while working as a station attendant for intervenor, the Washington Metropolitan Area Transit Authority ("WMATA"). Mr. Levy altered his gait to compensate for the left-knee injury, which in turn caused damage to his right knee. After surgery on his left knee, Mr. Levy returned to his previous job.

In 1998, Mr. Levy and WMATA agreed that Mr. Levy's medical condition had reached maximum improvement. Mr. Levy and WMATA memorialized their agreement in a stipulation. The stipulation stated that Mr. Levy had suffered a 7% permanent partial disability of his left leg and a 2.5% permanent partial disability of his right leg; that Mr. Levy was entitled to compensation of $487.70 per week for approximately twenty-seven weeks; and that WMATA would pay Mr. Levy's

future medical expenses related to the injury. The parties agreed to submit the stipulation to the Office of Workers' Compensation ("OWC") for its approval, and they requested the approval be "reduced to an Order." In June 1998, a senior claims examiner at OWC issued the requested order approving the stipulation.

Mr. Levy retired from WMATA in 1999. In 2002, he sought temporary total disability benefits, after he had surgery on his right knee. In 2003, an ALJ denied Mr. Levy's claim, because Mr. Levy had not "reached maximum medical improvement" and had not shown "an increase in his percentage of permanent partial disability." In 2006, the CRB affirmed, and Mr. Levy did not seek review of the CRB's ruling.

In 2011, Mr. Levy sought an award for a 37% permanent partial disability of his right leg. WMATA moved to dismiss, arguing among other things that (1) D.C. Code § 32-1524 (a) (2012 Repl.) prohibits claimants from seeking modification of a prior compensation order more than one year after they receive their last payment of compensation; (2) the OWC's order approving the parties' 1998 stipulation was a prior "compensation order" under § 32-1524; (3) Mr. Levy was seeking a modification of the OWC-approved stipulation; and (4) Mr. Levy's request for an award was therefore time-barred.

The ALJ rejected WMATA's argument that the OWC's 1998 order approving the stipulation was a prior compensation order. The ALJ nevertheless denied Mr. Levy's claim, on the ground -- not raised by WMATA -- that Mr. Levy's claim was a request for modification of the 2003 order denying compensation, and Mr. Levy's claim was therefore time-barred under § 32-1524 (a).

On appeal, the CRB concluded that Mr. Levy was not seeking modification of the 2003 order denying compensation, because the benefits Mr. Levy sought in 2011 (permanent partial disability benefits) differed from the benefits Mr. Levy sought in 2003 (temporary total disability benefits). The CRB nevertheless affirmed the ALJ's denial of relief, concluding that (1) the OWC's 1998 order approving the stipulation was "an award with the effect of a Compensation Order[,]" and (2) Mr. Levy was seeking modification of that order outside the one-year limitations period of § 32-1524 (a). Mr. Levy petitioned this court for review.

## II.

A claimant in a workers' compensation case may seek modification for up to one year after either "the last payment of compensation" or "the rejection of [a] claim." D.C. Code § 32-1524 (a). The CRB has interpreted the time limit in § 32-1524 (a) to apply only if there is "an existing compensation order" to modify. *Sodexho Marriott Corp. v. District of Columbia Dep't of Emp't Servs.*, 858 A.2d 452, 455 (D.C. 2004). This court deferred to that interpretation as reasonable. *Id.*

Under *Sodexho*, the OWC's 1998 order approving the stipulation would trigger § 32-1524 (a)'s time limit only if that order is a "compensation order." In *Sodexho*, we addressed the question whether an OWC-approved stipulation was a compensation order for purposes of § 32-1524 (a)'s time limit. 858 A.2d at 455-57. We concluded that the OWC-approved stipulation in *Sodexho* was not a compensation order, for two reasons. First, we noted that the stipulation left open the possibility that the claimant could recover additional workers' compensation benefits not covered by the stipulation. *Id.* at 455-56. Second, we accepted the CRB's conclusion that "stipulations are not compensation orders if they merely represent voluntary agreements approved by the Office of Workers' Compensation." *Id.* at 456. *See also id.* ("Approval by [OWC] of voluntary

payments . . . does not convert every such payment into a compensation order, unless it is a complete and final settlement and in other respects meets the requirements of D.C. Code § 32-1508(8)" (providing that approved lump-sum settlements discharging employer's liability for compensation are "complete and final dispositions" and "final binding compensation order[s])").

In this case, the CRB concluded that the OWC-approved stipulation triggered § 32-1524 (a)'s time limit. The CRB did not mention *Sodexho*, instead relying solely on what the CRB described as "*dicta*" from a footnote in this court's decision in an earlier case, *Smith v. District of Columbia Dep't of Emp't Servs.*, 548 A.2d 95, 101 n.20 (1988). According to the CRB, the dicta in *Smith* made "clear that the court viewed OWC approved stipulated awards . . . to be governed by the modification provisions of the [Workers' Compensation] Act." The CRB thus appears to have adopted the view that all OWC-approved stipulations trigger § 32-1524 (a)'s time limit. *See also Blanco*, CRB No. 12-087, 2013 WL 862342, at *3 (D.C. Dep't Emp't Servs. Feb. 19, 2013) ("The modification limitations found in [§ 32-1524 (a)] are applicable to stipulated schedule disability awards that have become final.") (citing the CRB's decision in the present case, *Levy*, CRB No. 11-151, 2012 WL 2929371 (D.C. Dep't Emp't Servs. June 8, 2012)). Such a view would be inconsistent with the position taken by the CRB and accepted by

this court in *Sodexho*. Of course, the "CRB is not precluded from changing its interpretation of [a statute] if it believes that a different interpretation is more consistent with the statutory language and legislative intent, but if it does so, it is obligated to provide an explanation of the change." *Hensley v. District of Columbia Dep't of Emp't Servs.*, 49 A.3d 1195, 1204-05 (D.C. 2012). The CRB did not provide such an explanation in this case.

The CRB also did not explicitly decide whether the OWC's order approving the stipulation in this case was a "compensation order." Rather, the CRB noted that the OWC had issued an order approving the stipulation, and the CRB described the order and the underlying stipulation as "an award with the effect of a Compensation Order." CRB regulations distinguish between compensation orders and other final orders. *See* 7 DCMR §§ 219.16, 219.17, 219.21 (2013) (where parties agree after informal procedures, OWC issues "Final Order" reflecting agreement); 7 DCMR § 299.1 (2013) (defining "Compensation Order" as "an order . . . which rejects a claim or which makes an award of compensation in respect of a claim under the Act[,]" and defining "Final Order" as "an order issued by [OWC] which formalizes the outcome of an informal . . . conference"). Describing the OWC's approval order in this case as an "award with the effect of a Compensation Order" does not necessarily establish that the OWC's approval

order actually is a compensation order within the meaning either of the CRB's regulations or of this court's decision in *Sodexho*.

In this court, the parties dispute whether the OWC-approved stipulation is a compensation order. The CRB should address this issue in the first instance. *See, e.g.*, *Hensley*, 49 A.3d at 1205 ("acknowledg[ing] the CRB's expertise and responsibility for administering the Workers' Compensation Act," the court "remand[s] the case to enable the CRB to consider in the first instance" whether its decision was consistent with earlier CRB decision) (internal quotation marks and alterations omitted). We express no opinion on the proper resolution of this case, instead remanding for the CRB to consider and expressly discuss this court's decision in *Sodexho* and the CRB's regulations. Finally, we note the potential relevance of this court's decision in *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1162-63 (D.C. 2012) (discussing meaning of phrase "compensation thereafter awarded" under Workers' Compensation Act).

**III.**

We vacate and remand, so that the CRB can provide further explanation of the basis for its decision.

*So ordered.*